## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| HUMPHRIES FITZ and PIUS JAY HUBERT**,** | ) | |
| | ) | |
| Plaintiffs, | ) | CIV. NO.: 08-cv-00060 |
| v. | ) | |
| | ) | |
| ISLANDS MECHANICAL CONTRACTOR, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ————————————————————— | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Finch, Senior Judge

THIS MATTER comes before the Court on Defendant Islands Mechanical Contractor Inc.'s Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration ("Motion to Compel"). By this motion, Defendant seeks to compel Plaintiffs to arbitrate their claims and stay this case in the District Court under the Federal Arbitration Act ("FAA"). Plaintiffs resist arbitration on the grounds that 1) the arbitration agreements are unsigned by the Defendant; 2) Plaintiffs did not knowingly and voluntarily agree to arbitrate their claims; 3) the arbitration agreements are unconscionable; and 4) they were fraudulently induced into signing them. After reviewing the briefs and the documents filed by the parties, the Court finds that Plaintiffs have raised a material issue of fact regarding whether they were fraudulently induced into signing the arbitration agreements. Accordingly, the Court denies Defendant's Motion to Compel and orders that this case proceed to trial on the issue of fraudulent inducement of the arbitration agreements.

## I. __Background__

In their complaint, plaintiffs Humphries Fitz and Pius Jay Hubert ("Plaintiffs") allege that, during their brief employment at Defendant Islands Mechanical Contractor Inc., ("Defendant"), they were subject to discrimination on the basis of their race, color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq*. and the Virgin Islands Civil Right Act, Titles 10 and 24 of the Virgin Islands Code. (*See* Compl., Doc. No. 1.) Specifically, they allege that Defendant treated them disparately on the basis of their race, did not give them the same pay and benefits as white workers, disciplined them more harshly than white workers, discriminatorily cut their pay and then fired them. (*Id.* ¶¶ 6-45.) Relying on an arbitration clause contained in Plaintiffs' Employment Agreements, Defendant moves to compel arbitration of all of Plaintiffs' claims.[1]

As part of Defendant's hiring process, each Plaintiff was given a nearly identical Employment Agreement. (*See* Employment Agreements ¶ 3, Doc. Nos. 3-1 (Fitz Agreement) and 3-2 (Hubert Agreement).) Paragraph 3 of the Employment Agreement is entitled "Compensation" and states that:

> During the period of employment, the Employer agrees to compensate the Employee for services rendered under this Agreement as follows:
>
> Employee shall initial one of the following:
>
> _____I elect to resolve disputes with Employer by arbitration in accordance with Paragraph 8 of this Agreement, and agree to accept $25.00 per hour as my initial, normal rate of compensation.
>
> _____I elect to resolve disputes with Employer through the Virgin Islands courts in accordance with Paragraph 9 of this Agreement, and

---

[1] Plaintiffs also brought claims for misrepresentation, intentional infliction of emotional distress, breach of the duty of good faith and fair dealing, and for punitive damages.

agree to accept $23.00 per hour as my initial, normal rate of compensation.[2]

**Note: If you fail to initial either of the above provisions and you sign this agreement, then you will be deemed to have elected to resolve disputes by arbitration as set forth above.**

(Employment Agreements ¶ 3) (emphasis in original).

Paragraph 7 of the Employment Agreements is entitled "Arbitration" and states that:

If Employee has so elected in paragraph 3 of this Agreement, the parties agree that any dispute or claim concerning:

    a.  this agreement,

    b.  the terms or conditions or employment (including, without limitation, claims relating to benefits; payments; allegations of discrimination, retaliation and/or "whistleblowing"; or termination);

    c.  any claims for personal injury or property damage in any way related to my employment, or arising out of my presence on or about the premises of the Virgin Islands Water and Power Authority property(ies) in the U.S. Virgin Islands; or

    d.  whether any dispute is arbitrable;

will be settled by arbitration.

(Employment Agreements ¶ 7.)

Plaintiffs Fitz and Hubert initialed each page of their Employment Agreements and signed the last pages. (*See* Employment Agreements 5.) Even though there is a signature block for "Islands Mechanical Contractor, Inc." on the last page of the Agreements, Defendant did not sign either Employment Agreement. (*Id.*) Plaintiffs do not contest that they signed these Employment Agreements or that they initialed each page, including the pages containing the

---

[2] It appears as though the arbitration selection clause contained in paragraph 3 erroneously refers to paragraph 8 ("Litigation Proceedings"), when it should refer to paragraph 7 ("Arbitration"). Similarly, the litigation selection clause contained in paragraph 3 erroneously refers to paragraph 9 ("Severability"), when it should refer to paragraph 8 ("Litigation Proceedings"). Neither party raised these typographical errors and the Court does not consider them pertinent to this motion. *See, e.g., Compass Technology, Inc. v. Tseng Laboratories, Inc.*, 71 F.3d 1125, 1132 (3d Cir. 1995) (citation omitted) (litigants must raise ambiguities in contract themselves for court to consider them).

arbitration clauses. Indeed, both Plaintiffs acknowledge that they "opted to elect to resolve disputes with the company through arbitration in exchange for the $25 rate I was offered, believing that the company would honor that bargain throughout the duration of my employment." (Fitz Aff. ¶ 7, Doc. No. 6-5; Hubert Aff. ¶ 10, Doc. No. 6-6.)

Plaintiffs claim that they worked at Islands Mechanical Contractor for a short period of time before they began to experience racial discrimination. (Fitz Aff. ¶¶ 13-21; Hubert Aff. ¶¶ 14-23.) Of particular relevance to this motion, Plaintiffs claim that, shortly after being hired, they were unjustifiably disciplined and asked to take significant pay cuts from their $25 an hour pay rate. (Hubert Aff. ¶¶17, 23; Fitz Aff. ¶¶ 16, 18-21.) Hubert avers that, within two weeks of being hired, Defendant demoted him, and cut his pay from $25 an hour to $16 an hour. (Hubert Aff. ¶¶ 23, 25-29.) Fitz claims that, within four to eight weeks after being hired, Defendant requested that he take a $7 an hour pay cut for "safety" reasons.[3] When Fitz refused, Defendant fired him. (Fitz. Aff. ¶¶ 18-20.) Both Plaintiffs claim that the justifications given by Defendant for their pay cuts were pretextual.[4]

## II. Discussion

### a. Plaintiffs' Challenges to the Formation of the Arbitration Agreements are Reviewed Under the Summary Judgment Standard

The FAA "provides that a court should not order arbitration unless it is satisfied that the making of the agreement for arbitration . . . is not in issue." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980) (internal quotations omitted) (citing 9 U.S.C. §

---

[3] Fitz does not indicate precisely how long he worked at Island Mechanical before his pay was reduced. He indicates that he was hired in February 2008 and that his pay was cut on April 1, 2008. (Fitz Aff. ¶ 18.)

[4] The specific reasons allegedly given by Defendant for Plaintiffs' pay cuts are discussed in more detail in section II(e), *infra*.

4).   Indeed, a court "must find that there is a valid agreement to arbitrate" before it compels

arbitration.   *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to*

*Retrocessional Agreement Nos. 950548, 950549, 950646,* 584 F.3d 513, 523 (3d Cir. 2009); *see*

*also Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1512 (3d Cir. 1994) *aff'd* 514 U.S.

938 (1995) ("There must be evidence sufficient to establish the parties' consent to arbitration."

(citations and internal quotations omitted)).   To determine whether the parties have agreed to

arbitrate, the Court applies "ordinary state-law principles that govern the formation of contracts."

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First*

*Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

A   court   may   "compel[]   arbitration   only   where   there   is   no   genuine   issue   of   fact

concerning the formation of the agreement to arbitrate."   *Id.* at 159 (citing *Par-Knit Mills,* 636

F.2d at 54).   In other words, a party moving to compel arbitration is akin to a party seeking

summary judgment; it must show that there is no genuine issue of material fact regarding the

existence of the arbitration agreement.   *Id.*; *see also Century Indem. Co.,* 584 F.3d at 528

("[T]the district court's order compelling arbitration is in effect a summary disposition of the

issue of whether or not there had been a meeting of the minds on the agreement to arbitrate."

(citation omitted)).

Pursuant to the summary judgment standard, "[o]nce the moving party points to evidence

demonstrating no issue of material fact exists, the non-moving party has the duty to set forth

specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder

could rule in its favor." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir.

1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986)).   "In

making   this   determination,   the   party   opposing   arbitration   is   entitled   to   the   benefit   of   all

reasonable doubts and inferences that may arise." *Kirleis*, 560 F.3d at 159. A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Here, Plaintiffs contend that the arbitration agreements in question are unenforceable because they lack Defendant's signature, were not knowing and voluntary waivers of Plaintiffs' constitutional rights to a jury trial, are unconscionable, and were fraudulently induced. (Pls.' Opp. at 5, 8, 10, 15, Doc. No. 6.) These are challenges to the formation of the arbitration agreement themselves, not the Employment Agreements in general. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 403-404 (1967) ("If the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the 'making' of the agreement to arbitrate-the federal court may proceed to adjudicate it."); *Gay v. CreditInform*, 511 F.3d 369, 388 (3d Cir. 2007) ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996))). Accordingly, the Court must apply the summary judgment standard to determine whether there is an agreement to arbitrate. While Defendant carries the burden of demonstrating that an arbitration agreement exists, Plaintiffs must show that there is a genuine issue of material fact regarding their defenses to the arbitration agreements. *Lloyd v. Hovensa*, 369 F.3d 263, 274 (3d Cir. 2004) ("The burden of proving a generally applicable contract defense lies with the party challenging the contract provision."); *Harris v. Green Tree Fin. Corp*., 183 F.3d 173, 181 (3d Cir. 1999) ("The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability."); *Paxson v. Asensio*, 2003 WL 21076984, at *4 -5 (E.D. Pa. 2003) (finding that party resisting arbitration had the "burden of proving his fraudulent inducement claim.").

### b. The Employment Agreements Are Enforceable Despite Not Being Signed by Defendant

Plaintiffs contend that "because Defendant did not sign the Employment Agreement containing the arbitration clause in question, no valid agreement exists between Plaintiffs and Defendant that would make said agreement binding." (Pls.' Opp. at 9.) Defendant contends that this argument is a "red herring" because "Plaintiffs signed the contract. Defendant hired Plaintiffs and paid them $25.00 per hour. There is no other proof needed that a valid employment agreement was entered into between the parties." (Def.'s Reply at 3, Doc. 7.) The Court agrees with Defendant for several reasons.

First, "[s]ignatures are not dispositive evidence of contractual intent . . . As a general rule, signatures are not required for a binding contract unless such signing is expressly required by law or by the intent of the parties." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 584 (3d Cir. 2009) (quoting *Shovel Transfer & Storage, Inc., v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999)); *see also Roadway Exp., Inc. v. General Teamsters, Chauffeurs and Helpers Union, Local 249*, 330 F.2d 859, 863 (3d Cir. 1964) ("[T]he fact that the proposed written agreement was not signed did not demonstrate as a matter of law that there was no contract."); *Ahouse v. Herbert*, 78 A.D.2d 713, 714 (N.Y. App. Div. 1980) (enforcing unsigned but initialed memorandum agreement).

The FAA does not require that the arbitration agreement be signed by all parties; it only requires that the arbitration clause be "written." 9 U.S.C. §§ 2 and 4; *Marino v. Dillard's Inc.*, 413 F.3d 530, 532 (5th Cir. 2005) (holding that, under FAA, arbitration agreements need only be written, not signed). Courts have routinely enforced unsigned arbitration agreements when the parties have otherwise manifested their intent to be bound by them. *See Marino*, 413 F.3d at 533

(finding that employee's continued employment following receipt of memo from employer that said "by accepting or continuing employment with Dillard's [the employee has] agreed to accept . . . the Agreement to Arbitrate Certain Claims" constituted acceptance of terms of arbitration agreement); *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del. 2009) (compelling arbitration because "[t]he facts presented suggest that plaintiff and her late husband reviewed the entire credit agreement, including the arbitration agreement, at least once. Their initials on the bottom of each page confirm as much."); *Delmore v. Ricoh Americas Corp.*, 667 F.Supp.2d 1129, 1136 (N.D. Cal. 2009) (compelling arbitration and finding that party's contention that arbitration clause was hidden and thus procedurally unconscionable "undercut by the fact that he initialed the arbitration clause."); *Marini v. Quality Remodeling Co.*, 2006 N.J. Super. Unpub. LEXIS 597 at *7-8 (App. Div. Feb. 10, 2006) (finding that party's initials on page containing arbitration clause was sufficient assent to arbitration clause). Thus, the signature of both parties on the Employment Agreement is not a *per se* requirement for enforcement of an arbitration agreement.

Plaintiffs assert that "the contract expressly required written execution by both parties, as is evidenced by Paragraph 13 of the Agreement, voiding any modification of the contract in the absence of the initials of both parties to the change." (Pls.' Opp. at 9.)[5] Plaintiffs also argue that paragraphs 10 and 11 of the Employment Agreement, requiring written consent by both parties in order to assign or amend the agreement, are evidence that the Employment Agreement expressly requires the Defendant's signature to take effect. However, courts have rejected similar arguments. *See, e.g., In re The Score Board, Inc.*, 238 B.R. 585, 592 (Bankr. D.N.J. 1999) (finding clause requiring that "amendments or modifications must be in writing and

---

[5] The Employment Agreements do not contain a paragraph 13. The Court believes that Plaintiffs are referring to paragraph 12 entitled "Modification of this Agreement."

executed by the parties" did "not explicitly require the signatures of both parties as a condition precedent to the formation of a valid contract."). While paragraphs 10, 11, and 12 require the written consent of both parties to modify, amend, or assign the Employment Agreement, they do not expressly state that the Employment Agreement itself requires the signature of the Defendant. [6]

The best evidence that the Employment Agreements expressly require Defendant's signature is the presence of a signature block for the president of Islands Mechanical on the last page of the Employment Agreements. *Cf. Wald v. 1 Financial Marketplace Securities, LLC*, 2009 WL 3209930, at *5 (E.D. Pa. 2009) ("[T]the lack of a signature block for [Defendant] evidences not that the agreement is unenforceable, but instead that the parties did not intend to require a signature on behalf of [Defendant] in order to consummate the contract."). However, "signature lines alone [are] insufficient proof of the parties' intent to execute the agreement in writing." *Buzzmarketing, LLC v. Upper Deck Co. LLC*, 2004 WL 966241, at *3 (E.D. Pa. 2004) (citing *Shovel Transfer & Storage, Inc*., 739 A.2d at 138). Accordingly, Plaintiffs have not shown that the Employment Agreement or the FAA expressly requires the signature of the Defendant to be valid. *American Eagle Outfitters,* 584 F.3d at 584.

Under the Restatement, a "manifestation of assent may be made wholly or partly by written or spoken words or by other acts or failure to act." Restatement (Second) of Contracts §

---

[6] *RCG Intl. Investors, LDC v. ARI Network Servs.*, 2004 U.S. Dist. Lexis 1161 (D. Del. 2004), cited by Plaintiffs in support of their argument that Defendant's signature was required, is easily distinguishable. In that case, the district court held that signatures were expressly required by both parties because the contract stated "[t]his term sheet will be considered void if it is not executed by both parties." *Id*. at *14. No similar language appears in the Plaintiffs' Employment Agreements.

19(1) (1981).[7]    In other words, "a contract may be inferred from fact." *Bolinger v. V.I. Tel. Corp.*, 293 F. Supp. 2d 559, 564 (D.V.I. 2003) (finding that arbitration agreement in expired employment contract was enforceable because plaintiff "continued employment beyond the original one-year agreement at the same rate of pay."). Here, the conduct of the parties demonstrates that Plaintiffs and Defendant mutually agreed to be bound by the Employment Agreements and the arbitration clauses contained therein. Plaintiffs were given the Employment Agreements and signed them, electing to receive $25 an hour. (*See* Fitz Aff. ¶¶ 6-7; Hubert Aff. ¶¶ 9-10.)    In turn, Defendant hired them and began paying them the $25 an hour pay rate as agreed to in the Employment Agreements. (*See* Paychecks, Doc. Nos. 3-3 and 3-4.) The Court finds this conduct a sufficient manifestation of mutual assent to the terms of the Employment Agreements, including the $25 an hour/arbitration clauses.[8]  *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) (holding that under the Restatement, "[a]cceptance is measured not by the parties' subjective intent, but rather by their outward expressions of assent."); *Univ. of V.I. v. Petersen-Springer*, 232 F. Supp. 2d 462, 469 (D.V.I. 2002) ("Under Virgin Islands law, the essential prerequisites for the creation of a valid contract are a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.").

---

[7] Pursuant to 1 V.I.C. § 4, in the absence of contrary Virgin Islands law, courts construing Virgin Islands law must apply "the rules of the common law, as expressed in the restatements of law approved by the American Law Institute." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) (quoting 1 V.I.C. § 4 (2007)); *USDA Rural Hous. v. Phillips*, 2010 U.S. Dist. LEXIS 37519, *10 n.4. (D.V.I. Apr. 15, 2010) (Finch, J.,) (same).

[8] Even if Defendant's signature was required, Plaintiffs have waived this requirement by reporting to work and accepting $25 an hour as pay. *See In re The Score Board, Inc.*, 238 B.R. at 592 ("This Court finds that the clauses do not explicitly require the signatures of both parties as a condition precedent to the formation of a valid contract . . . Even if such clause could be read as [such], the subsequent conduct of the parties clearly signified the intention of the parties to waive those requirements.").

Finally, Plaintiffs' claims that they and Defendant had "entered into . . . the arbitration agreement[s]" and are therefore "entitled to the $25 . . . that [they] had agreed upon" estops them from asserting that the arbitration agreements do not exist. (Fitz. Aff. ¶¶ 7-9; Hubert Aff. ¶¶ 10, 12.)  *See E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001) (holding that party was estopped to deny existence of agreement to arbitrate "when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." (*citing International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 418 (4th Cir.2000))); *see also Friedman v. Yula*, 679 F.Supp.2d 617, 628 (E.D.Pa. 2010) (Plaintiff, who relied on terms of contracts between third party and defendants to prove his claims, "cannot now walk away from the arbitration clauses in the Agreements.").

### c. The "Knowing and Voluntary" Standard Established by 5 V.I.C. 815 is Preempted by the FAA

Plaintiffs argue that under Virgin Islands law, the arbitration clause is unenforceable because they did not knowingly and voluntarily waive their constitutional right to a jury trial. (Pls.' Opp. at 4-5.)  In support of this claim, Plaintiffs cite 5 V.I.C. 815 which states that "[a]n agreement that waives a right guaranteed by the Constitution of the United States, is unenforceable, unless the waiver of the right is agreed to knowingly and voluntarily." Defendants, in turn, argue that this statute is "clearly an attempt to invalidate arbitration

agreements in the Virgin Islands and is therefore preempted" by the Federal Arbitration Act. (Def.'s Reply at 4.)[9]

Section 2 of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). The Supreme Court has interpreted this clause to mean that state law may be applied to invalidate an arbitration agreement "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc., v. Casarotto*, 517 U.S. 681, 686-687 (1996) (internal quotations and citations omitted); *see also Perry v. Thomas*, 482 U.S. 483, 492 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). Following these cases, the Third Circuit has similarly held that "a court can decline to enforce such a contract if and only if

---

[9] While the Third Circuit has not had occasion to address the validity of section 815, it has previously held that "applying a heightened 'knowing and voluntary' standard to arbitration agreements would be inconsistent with the FAA." *Morales*, 541 F.3d at 224 (citing *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 183-84 (3d Cir. 1998) overruled on other grounds by *Green Tree Financial Corp. Alabama v. Randolph*, 531 U.S. 79 (2000)). Following *Morales* and *Seus*, this Court has previously ruled that "section 815 may not be applied to an arbitration agreement." *Cannonier v. Turner Int'l, LLC*, 2010 U.S. Dist. LEXIS 17173 at *10-11 (D.V.I. Feb. 25, 2010) (Finch, J.,); *see also Richardson v. V.I. Port Auth.*, 2010 U.S. Dist. LEXIS 40787 (D.V.I. Apr. 21, 2010) ("Consistently, cases arising within the Third Circuit have held that nothing in either the United States Constitution or 5 V.I.C. § 815 permits the application of a knowing and voluntary waiver standard to determine the validity of an arbitration agreements." (citing cases)). However at least one case in this district has applied section 815 to an arbitration agreement. *See Foy v. Ambient Techs., Inc.*, 2009 U.S. Dist. LEXIS 52121, at *6 (D.V.I. June 19, 2009) (applying 5 V.I.C. § 815 but holding that plaintiff's "waiver of his right to a jury trial was voluntary and knowing."). Because of the apparent split in this district over application of section 815 and because neither *Seus* nor *Morales* directly address whether section 815 is preempted by the FAA, this Court will further explain its holding in *Cannonier* that section 815 is preempted by the FAA.

the party resisting arbitration can point to a generally applicable principle of contract law under which the agreement could be revoked." *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 183 (3d Cir. 1998) overruled on other grounds by *Green Tree Financial Corp. Alabama v. Randolph*, 531 U.S. 79 (2000).[10] Thus, the question for this Court is whether 5 V.I.C. § 815 applies to "any contract," or in other words, whether it is a "generally applicable principle of contract law."

Cases addressing the conflict between the FAA and state laws prohibiting or restricting arbitration agreements universally support the proposition that a state statute prohibiting arbitration is not a "generally applicable principle of contract law" when it is limited to a specific type of contract. For example, in *Doctor's Associates*, the Supreme Court held that a Montana statute, conditioning enforcement of arbitration agreements on a notice provision requiring that any contract containing an arbitration clause state that the contract is subject to arbitration in underlined capital letters on the first page of the contract, was preempted by the FAA because it "places arbitration agreements in a class apart from 'any contract,' and singularly limits their validity." 517 U.S. at 688.[11] In *Bradley v. Harris*, the Ninth Circuit held that a California statute, requiring that all arbitration falling under California's Franchise Relations Act take place in California, was preempted by the FAA because it "applies only to forum selection clauses and only to franchise agreements; it therefore does not apply to 'any contract.'" 275 F.3d at 890. [12]

---

[10] *See also Bradley v. Harris Research, Inc.*, 275 F.3d 884, 890 (9th Cir. 2001) ("[T]he reasoning of both *Doctor's Assocs.* and *Perry*, as well as the language of 9 U.S.C. § 2, indicate that a state law that invalidates arbitration agreements is not preempted by the FAA only if the law is 'generally applicable,' [citation] or applies to 'any contract.' (citing *Doctor's Assocs.*, 517 U.S. at 687; 9 U.S.C. § 2)).

[11] The Montana statute, Mont.Code § 27-5-114(4), provided that: "Notice that a contract is subject to arbitration ... shall be typed in underlined capital letters on the first page of the contract; and unless such notice is displayed thereon, the contract may not be subject to arbitration."

[12] The California statute at issue provided that "[a] provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a

Similarly, the Fifth Circuit held that a Louisiana statute, requiring that arbitration relating to certain construction contracts take place in Louisiana, was preempted by the FAA because "the Louisiana statute conditions the enforceability of arbitration agreements on selection of a Louisiana forum; a requirement not applicable to contracts generally." *OPE Intern. LP v. Chet Morrison Contractors, Inc*., 258 F.3d 443, 447 (5th Cir. 2001). [13] And recently, the Illinois Supreme Court held that a provision of the Illinois Nursing Home Care Act, which voided any "waiver of the right to trial by a jury," was preempted by the FAA because "the antiwaiver provisions of the Nursing Home Care Act purport to invalidate arbitration agreements in a specific type of contract-those involving nursing care-and for that reason alone they are not a defense generally applicable to 'any contract.'" *Carter v. SSC Odin Operating Co*., __ N.E. 2d __, 2010 WL 1493626, at *9 (Ill. April 15, 2010); *see also Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995, 998 (8th Cir. 1972) ("The plain meaning of § 2 is that federal courts are no longer to apply state statutes and decisions which limit arbitration agreements with rules not applicable to other contracts." (citations omitted)); *Michael v. N.A.P. Consumer Elecs. Corp*., 574 F.Supp. 68, 70-71 (D.P.R. 1983) (reasoning that a Puerto Rico statute requiring dealership contract controversies to be arbitrated or litigated in Puerto Rico "proscribe[d] the use of arbitration clauses only in dealership contracts" and so was preempted by the FAA).[14]

---

franchise agreement involving a franchise business operating within this state." Cal. Bus. & Prof.Code § 20040.5.

[13] The Louisiana statute provided in pertinent part: "The legislature hereby declares null and void and unenforceable as against public policy any provision in a contract, subcontract, or purchase order . . . which . . . [r]equires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state; rather, such actions or proceedings may be pursued in accordance with the Louisiana Code of Civil Procedure or other laws of this state governing similar actions." La.Rev.Stat. § 9:2779(b)(1).

[14] Plaintiffs cite *Walker v. Ryan's Family Steak House, Inc*., 400 F.3d 370 (6th Cir. 2005), for the proposition that an arbitration agreement is unenforceable unless the signatories knowingly and voluntarily waive their right to a jury trial. (Pls.' Opp. at 12.) However, many Circuits,

With this principle in mind – that a court may not refuse to enforce an arbitration agreement based on state law applicable to only certain types of contract – the Court now turns to section 815 which applies only to "[a]n agreement that waives a right guaranteed by the Constitution of the United States." 5 V.I.C. § 815.  Like the above discussed state statutes, section 815 does not apply to "any contract" and cannot be said to be a generally applicable principle of contract law because it is limited to a specific type of contract – an agreement involving the waiver of constitutional rights.  Because section 815 places contracts concerning constitutional rights "in a class apart from any contract and singularly limits their validity," the Court holds that section 815 is preempted by the FAA.[15]  *Doctor's Assoc.*, 517 U.S. at 688; 9 U.S.C. § 2.

---

including this one, have specifically rejected the knowing and voluntary standard.  *See Morales*, 541 F.3d at 224 ("[A]pplying a heightened 'knowing and voluntary' standard to arbitration agreements would be inconsistent with the FAA." (citing *Seus,* 146 F.3d at 183-84)); *Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1372 (11th Cir. 2005) ("We thus conclude that general contract principles govern the enforceability of arbitration agreements and that no heightened "knowing and voluntary" standard applies, even where the covered claims include federal statutory claims generally involving a jury trial right."); *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002) (holding that parties' arbitration agreement, which stated that the right to a trial and to a jury were waived, validly waived those trial rights, and rejecting arguments that a heightened "clear and unmistakable" or "voluntary, knowing, and intelligent" standard applied to the waiver); *Koveleskie v. SBC Capital Mkts., Inc*., 167 F.3d 361, 368 (7th Cir.1999) (evaluating arbitration agreement under general contract principles and rejecting Seventh and Fifth Amendment waiver arguments because there was no constitutional right to a jury trial for claims subject to the arbitration clause and the arbitral forum adequately protects an employee's substantive and procedural statutory rights).  Moreover, *Walker* was not a preemption case.

[15] This case presents an issue of conflict-preemption – i.e. when state and federal law actually conflict. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477 (1989) ("[W]hen Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law-that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (citations omitted)). Accordingly, this holding is limited to section 815's application to arbitration agreements within the jurisdictional ambit of the FAA. *See Government of Virgin Islands v. United Indus. Workers, N.A*., 169 F.3d 172, 176 (3d Cir. 1999) (noting that the FAA "applies in state courts to the extent

#### d. The Arbitration Agreement is Not Unconscionable

Plaintiffs' unconscionability claim rests entirely on their argument that they did not knowingly and voluntarily waive their right to a jury trial in violation of 5 V.I.C. § 815. (*See* Pls.' Opp. at 11-15.) As section 815 is preempted by the FAA, it cannot form the basis for an unconscionability claim. Accordingly, Plaintiffs have failed to show that the arbitration clause is unconscionable.

#### e. Plaintiffs Have Presented Sufficient Evidence to Create a Question of Material Fact as to Whether They Were Fraudulently Induced Into Signing the Arbitration Agreements

Like any other contract, an arbitration agreement procured by fraud may be voidable by the defrauded party. *Gay,* 511 F.3d at 388 ("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements."); *see also* Restatement (Second) of Contracts, § 164 (1) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."). However, to invalidate an arbitration agreement, the fraud must go to the arbitration agreement itself – not the contract in general. *Prima Paint Corp.,* 388 U.S. at 403-404 ("If the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the 'making' of the agreement to arbitrate-the federal court may proceed to adjudicate it.").

Here, Plaintiffs contend Defendant offered them the $25 an hour rate so that they would agree to the arbitration clause, but had no intention of paying them $25 an hour for the duration of their employment. (Pls.' Opp. at 7-8.) Plaintiffs' support their fraudulent inducement claim

that an arbitration provision affects interstate commerce." (citing *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265 (1995))).

with their declarations which establish that: (1) Plaintiffs were hired in February and March 2008; (2) the Employment Agreements gave them two options – earn $25 an hour and agree to arbitrate any claims concerning their employment or earn $23 an hour and retain the right to litigate their claims against Defendant in court; (3) Plaintiffs chose to earn $25 an hour and arbitrate their claims; (4) shortly after being hired, they were demoted and asked to take substantial pay cuts; (5) the reasons given for their demotions were discriminatory; and (6) Defendant did not offer or agree to revoke the arbitration clauses in exchange for lowering their wages.

Defendant argues that Plaintiffs have not offered sufficient evidence to demonstrate that it fraudulently induced them into signing the arbitration agreements. (Def.'s Reply at 3.) Specifically, Defendant argues that "there is no independent evidence that there was any misrepresentation or that Defendant did not intend to keep its end of the bargain." (*Id.*) In support of this argument, Defendant has submitted proof that, for at least one pay period, Plaintiffs were paid $25 an hour. (*See* Paychecks.) Defendant claims that this shows that it "did keep its end of the bargain." (Def.'s Reply at 3.)

In the Virgin Islands, a fraudulent inducement claim has essentially the same elements as common law fraud. *Beachside Associates, LLC v. Okemo Ltd. Liability Co.*, 2008 WL 5455402, at *2 (D.V.I. 2008) (citing *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F.Supp.2d 545, 568-69 (D.V.I. 2004)). Those elements are "(1) a misrepresentation of fact, opinion, intention or law; (2) knowledge by the maker of the representation that it was false; (3) ignorance of the falsity by the person to whom it was made; (4) an intention that the representations should be acted upon; and (5) detrimental and justifiable reliance." *Shillingford v. Hess Oil of the V.I.*, 2009 U.S. Dist.

LEXIS 53371, at *28-29 (D.V.I. 2009) (citing *Financial Trust Co., Inc. v. Citibank, N.A.*, 351 F. Supp. 2d 329, 332 (D.V.I. 2004) and Restatement (Second) of Torts, § 525 (1977)).

The Court begins with proof of Defendant's fraudulent intent to pay Plaintiffs $25 an hour. To succeed on their fraud claim, Plaintiffs "must show that when the promise was made, [Defendant] had no intent to fulfill it." *McDonald v. Davis*, 51 V.I. 573, 587 (D.V.I. 2009); *see also* Restatement (Second) of Torts, § 530(1) (1977) ("A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention."). Defendant's "fraudulent intent may . . . be proved by circumstantial evidence." Restatement (Second) of Torts, Appendix, Rep. Note; s*ee Wilson v. S & L Acquisition Co., L.P.*, 940 F.2d 1429, 1440 (11th Cir. 1991) (noting that "usually the only way to prove the intent of the person making the promise at the time the promise was made is through inferences rather than direct evidence."); *China Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc.*, 856 F.Supp. 856, 863 (D.Del. 1994) ("Since actual fraudulent intent is rarely susceptible to direct proof, it is normally proven by circumstantial evidence."); *see also Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) ("Even slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent.").

"The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance." Restatement (Second) of Torts § 530 cmt. d. In other words, "mere proof of nonperformance" is insufficient evidence, as a matter of law, to demonstrate a party's fraudulent intent. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1186 (3d Cir. 1993) (interpreting New Jersey law). However, fraudulent intent "may be inferred from the promisor's repudiation of the promise soon after it is made, with no intervening change in the situation." Restatement (Second) of Torts, § 530, Appendix, Rep. Note; *see*

*Western Reserve Life Assur. Co. of Ohio v. Bratton*, 464 F.Supp.2d 814, 843 (N.D. Iowa 2006) (same); W. Prosser, The Law of Torts § 109, at 730-31 (4th ed.1971) (same); *see also United States v. Bortnick*, 2005 WL 1693924, at *26 (E.D. Pa. 2005) (upholding jury's guilty verdict for concealing property in anticipation of bankruptcy proceeding because of short time period (one month) between large shipment and defendant's filing for bankruptcy). "A party's intent . . . may be inferred from the party's acts after the representation was made. Although the failure to perform, standing alone, is not evidence of the promisor's intent not to perform, it may be considered with other factors to establish intent." *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App. 1998) (citation omitted); *see also Stauffer v. Stauffer*, 351 A.2d 236, 244 (Pa. 1976) ("It is clear that a fraudulent intention at the time of a transaction can be inferred from the totality of the circumstances surrounding the transaction, including subsequent conduct on the part of the defendant.").

　　While perhaps not rising to the level of clear and convincing, the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to raise a material question of fact regarding Defendant's intent, at the time Defendant and Plaintiffs entered into the arbitration agreements, to pay Plaintiffs $25 an hour for the duration of their employment.[16]  The temporal proximity between Plaintiffs' hire date and their pay cuts – less than two weeks in the case of Fitz – is circumstantial evidence of Defendant's fraudulent intent.[17]  *See Grewal v. Choudhury*, 2008 WL

---

[16] Under Virgin Islands law, fraud must be only be proven by a preponderance of the evidence, as opposed to clear and convincing evidence.  5 V.I.C. § 740(5) ("In civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory the finding shall be according to the preponderance of evidence"); *Addie v. Kjaer*, 2009 U.S. Dist. LEXIS 72136, at *6 (D.V.I. 2009) (holding that "common law fraud claims in the Virgin Islands are subject to a preponderance of the evidence standard." (citing 5 V.I.C. § 740(5))).

[17] The fact that Defendant paid Plaintiffs $25 an hour for at least one paycheck is not dispositive of its intent, particularly in light of the fact that it appears that Plaintiff Fitz was paid $25 an hour for *only* one paycheck. *See Kevin M. Ehringer Enterprises Inc. v. McData Services Corp.*, 2010

2276309, at *4 (N.D. Cal. 2008) (finding fact that defendant used plaintiff's funds for his own business operations only two weeks after promising to put plaintiff's money in offshore accounts circumstantial evidence of defendant's fraudulent intent at time promise was made).

Furthermore, Plaintiffs have presented sufficient facts to show that there might not have been an "intervening change in the situation" that would justify their near immediate paycuts. *See* Restatement (Second) of Torts, § 530. Hubert avers that he was hired as an iron-worker, demoted "for not being able to use hand signals to signal a crane," and that his pay was cut from $25 an hour to $16 an hour. (Hubert Aff. ¶¶ 3, 9, 17.) However, he states that iron workers are not required to know crane signals and that his white iron-worker counterparts "did not know the signs but they were not demoted, nor did they have to accept a reduction in pay." (*Id*. at ¶¶ 17-18.) Fitz avers that he was hired as a crane operator and that he was asked to take a pay cut because he did not know how to cut steel with a cutting torch which was really "ironworker work" that "white stateside crane operators were not required to do." (Fitzt Aff. ¶¶ 18-20.)[18] Plaintiffs have offered evidence that, if true, shows that Defendant gave illegitimate and pretextual reasons for their drastic paycuts, negating the presence of an "intervening change in

---

WL 711818, at *7 (N.D. Tex. 2010) (holding that "partial performance . . . does not necessarily defeat a claim for fraudulent inducement.").

[18] Defendant argues that Plaintiffs' declarations are "blatantly self serving and are not substantive evidence of any misrepresentation." (Def.'s Reply at 3.) While it is true that "mere allegations, general denials, or vague statements" are insufficient to support an allegation that an arbitration clause was fraudulently induced (see *Northwestern Nat. Life Ins. Co. v. U.S. Healthcare, Inc*., 1998 WL 252353, at *11 (E.D. Pa. 1998)), Plaintiffs' affidavits provide detailed facts concerning how their demotions were based on pretextual reasons. Despite Plaintiffs' evidentiary showing in their opposition papers, Defendant offered no evidence to rebut Plaintiffs' fraudulent inducement claims other than the paychecks. But even if Defendant had offered legitimate justifications for their pay cuts, Plaintiffs have still shown a question of material fact. *See EBC, Inc. v. Clark Bldg. Systems*, 2007 WL 4563518, at *8 (W.D. Pa. 2007) (finding defendant's fraudulent intent at issue "[b]ecause the parties proffer entirely different reasons for sending the May 26th letter and the statements of [defendant] [and] determining the real reason for their issuance is a factual inquiry.").

the situation." This is circumstantial evidence of Defendant's fraudulent intent. *See Wilson*, 940 F.2d at 1441 (affirming jury's finding that plaintiff was fraudulently induced to relocate to Georgia from Alabama for work based on evidence that defendant promised to relocate plaintiff if she was unhappy in Georgia, fired her shortly after she moved, refused to pay her for her moving expenses, and provided false justification for her termination). Defendant might ultimately prove that its justifications for cutting Plaintiffs' wages after only two weeks were legitimate; however, this is a question of fact. The Court finds that, under the totality of the circumstances, Plaintiffs have provided evidence sufficient to raise a material question of fact of Defendant's intent at the time it hired Plaintiffs and promised them $25 an hour in exchange for agreeing to arbitration.

Plaintiffs have also satisfied the other elements of fraudulent inducement, including sufficient proof of their ignorance of the falsity of Defendant's misrepresentation. Plaintiffs stated that they believed Defendant would honor the $25 an hour wage/arbitration agreement throughout the duration of their employment. (Fitz Aff. ¶ 7; Hubert Aff. ¶ 10.) This is sufficient to establish their ignorance of the falsity of the misrepresentation. Plaintiffs were also justified in relying on Defendant's promise to pay them $25 an hour. When they accepted employment, they had no reason to doubt that Defendant would pay them as promised. *See* Restatement (Second) of Torts, § 544 (1977) ("The recipient of a fraudulent misrepresentation of intention is justified in relying upon it if the existence of the intention is material and the recipient has reason to believe that it will be carried out."). Furthermore, the $25 an hour wage/arbitration agreement was contained in the written Employment Agreement offered by Defendant to Plaintiffs. Thus, it can safely be said that Defendant intended Plaintiffs to rely on its promise to pay them $25 an hour in consenting to the arbitration clause. Restatement (Second) of Torts, § 532 cmt. b. (1977)

("[T]he maker of a fraudulent misrepresentation incorporated in a document has reason to expect that it will reach and influence any person whom the document reaches.").

Having shown that there is a material issue of fact regarding whether they were fraudulently induced into agreeing to arbitration, Plaintiffs are entitled to a trial on this issue. 9 U.S.C.A. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."); *Par-Knit Mills,* 636 F.2d at 54 ("In the event that the making of the arbitration agreement is in issue, then the court shall proceed summarily to the trial of that issue." (citing 9 U.S.C. § 4 (internal quotations omitted))). At trial, Plaintiffs shall have the burden of proving that they were fraudulently induced into agreeing to the arbitration clauses. *Lloyd,* 369 F.3d at 274 ("The burden of proving a generally applicable contract defense lies with the party challenging the contract provision.").

### III.    <u>Conclusion</u>

The Court finds that Plaintiffs have shown that there is material issue of fact regarding whether Defendant fraudulently induced them into signing the arbitration agreement. Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration is **DENIED** without prejudice**.** The case shall proceed to a trial on the issue of whether Defendant fraudulently induced Plaintiffs into signing the arbitration agreement.

**ENTERED this 9th day of June, 2010**.


_____/s/_____
HONORABLE RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE