**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

―――――――――――――――――――――――――
                                                          )
**HUMPHRIES FITZ** and                                    )
**PIUS JAY HUBERT,**                                      )
                                                          )
       **Plaintiffs,**   )
                                                          )
       v.                )    Civil Action No. 2008-060
                                                          )
**ISLANDS MECHANICAL**                                    )
**CONTRACTOR, INC.,**                                     )
                                                          )
       **Defendant.**    )
―――――――――――――――――――――――――)

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiffs*

**Andrew C. Simpson, Esq.,**
**Rachelle M. Shocklee, Esq.,**
St. Croix, U.S.V.I.
    *For the Defendant*

**MEMORANDUM OPINION AND ORDER**

**Lewis, District Judge**

    THIS MATTER comes before the Court on Defendant's "Motion in Limine to Exclude Improper References at Trial," filed on September 7, 2011. (Dkt. No. 56). In that Motion, Defendant seeks a Court order barring Plaintiff from using "any language in opening statements, closing arguments or through testimony of witnesses" that (1) "relate[s] to Plaintiffs' underlying claims" or (2) "refers to 'locals' or prejudice against 'locals' or alleged discrimination against

'locals' by Defendant." (*Id.* at 3).¹  For the reasons discussed below, the Court will grant in part and deny in part Defendant's Motion.

## I.     BACKGROUND

Plaintiffs Humphries Fitz and Pius Jay Hubert filed a Complaint on July 8, 2008 against Defendant Islands Mechanical Contractor, Inc. ("Defendant" or "IMC"), alleging that Defendant discriminated against them on the basis of their race, color, and national origin by not giving them the same pay and benefits as white workers, disciplining them more harshly than white workers, and discriminatorily cutting their pay and firing them.  (Compl. at 1–7, Dkt. No. 1). Plaintiffs assert violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Count I), and violations of the Virgin Islands Civil Rights Act, Titles 10 and 24 of the Virgin Islands Code (Count II); an entitlement to reimbursement for Plaintiff Hubert's expenses in purchasing tools and a belt in reliance on Defendant's representations that Hubert would be treated fairly and employed during the duration of Defendant's contract (Count III); intentional or negligent infliction of emotional distress (Count IV); violations of Defendant's duty of good faith and fair dealing, and of public policy (Count V); and punitive damages (Count VI).²  (Compl. at 1–2, 7–9, Dkt. No. 1).

On August 25, 2008, Defendant filed a "Motion to Compel Arbitration and to Stay

---

¹ Defendant filed a substantially similar Motion *in Limine* in *Prevost v. Islands Mechanical Contractor, Inc.* (1:08-cv-110, Dkt. No. 56).  These cases had previously been consolidated for purposes of discovery on the issue of the arbitrability of Plaintiffs' underlying claims.  In a Memorandum Opinion and Order dated March 1, 2013, the Court granted Defendant's "Unopposed Motion to Consolidate" the two cases for purposes of the upcoming trial on the arbitrability issue.  (1:08-cv-060, Dkt. No. 81; 1:08-cv-110, Dkt. No. 84).

² It is well settled that a claim for punitive damages is not a distinct cause of action.  *Galloway v. Islands Mechanical Contractor, Inc.*, Civ. No. 2008–071, 2012 WL 3984891 at *19 (D.V.I. Sept. 11, 2012); *see also, e.g.*, *McDonald v. Davis*, 2009 WL 580456, at *16 (D.V.I. Mar. 5, 2009) (collecting cases).  However, Plaintiffs will be allowed to seek punitive damages at trial with regard to those claims for which the law and evidence support such an award.

Proceedings Pending Arbitration." (Dkt. No. 3). In that Motion, Defendant argued that Plaintiffs had each signed an Employment Agreement containing a binding arbitration provision, pursuant to which Plaintiffs agreed to arbitrate all claims arising out of their employment with Defendant. (Dkt. No. 3 at 1–3). Defendant thus argued that "this matter must be referred for arbitration pursuant to the Plaintiff's employment contract and the matter stayed until completion of all arbitration proceedings." (*Id.* at 3).

In opposition, Plaintiffs argued that the arbitration agreements are unenforceable because: (1) they are not signed by Defendant; (2) Plaintiffs did not knowingly and voluntarily agree to arbitrate their claims; (3) the agreements are unconscionable; and (4) Defendant fraudulently induced Plaintiffs agreeing to arbitrate. (Dkt. No. 6 at 1, 8). In a Memorandum Opinion and Order issued on June 9, 2010, the Court denied Defendant's Motion to Compel and ordered that the case proceed to trial on the issue of fraudulent inducement. *Fitz v. Islands Mechanical Contractor, Inc.*, Civ. No. 08-cv-00060, 2010 WL 2384585 at *1 (D.V.I. June 9, 2010).

In its Memorandum Opinion and Order, the Court summarized the relevant factual background:

> As part of Defendant's hiring process, each Plaintiff was given a nearly identical Employment Agreement. (*See* Employment Agreements ¶ 3, Dkt. Nos. 3-1 (Fitz Agreement) and 3-2 (Hubert Agreement)). . . .
> Plaintiffs Fitz and Hubert initialed each page of their Employment Agreements and signed the last pages. (*See* Employment Agreements 5.) Even though there is a signature block for "Islands Mechanical Contractor, Inc." on the last page of the Agreements, Defendant did not sign either Employment Agreement. (*Id.*) Plaintiffs do not contest that they signed these Employment Agreements or that they initialed each page, including the pages containing the arbitration clauses. Indeed, both Plaintiffs acknowledge that they "opted to elect to resolve disputes with the company through arbitration in exchange for the $25 rate I was offered, believing that the company would honor that bargain throughout the duration of my employment." (Fitz Aff. ¶ 7, Doc. No. 6-5; Hubert Aff. ¶ 10, Doc. No. 6-6.)
> Plaintiffs claim that they worked at Islands Mechanical Contractor for a short period of time before they began to experience racial discrimination. (Fitz

3

>Aff. ¶¶ 13-21; Hubert Aff. ¶¶ 14-23.) Of particular relevance to this motion, Plaintiffs claim that, shortly after being hired, they were unjustifiably disciplined and asked to take significant pay cuts from their $25 an hour pay rate. (Hubert Aff. ¶¶17, 23; Fitz Aff. ¶¶ 16, 18-21.) Hubert avers that, within two weeks of being hired, Defendant demoted him, and cut his pay from $25 an hour to $16 an hour. (Hubert Aff. ¶¶ 23, 25-29.) Fitz claims that, within four to eight weeks after being hired, Defendant requested that he take a $7 an hour pay cut for "safety" reasons.[] When Fitz refused, Defendant fired him. (Fitz. Aff. ¶¶ 18-20.) Both Plaintiffs claim that the justifications given by Defendant for their pay cuts were pretextual.

*Fitz*, 2010 WL 2384585 at *1–*2.

Based on the evidence presented, the Court concluded that the Employment Agreements are enforceable; that Plaintiffs and Defendant mutually agreed to be bound by the terms of the Agreements, including the arbitration clauses; that Plaintiffs were estopped from asserting that the arbitration clauses do not exist; and that the arbitration clauses are not unconscionable. *Id.* at *4–*8. However, the Court also ruled that Plaintiffs had presented sufficient evidence to create a question of material fact as to whether they were fraudulently induced into signing the arbitration agreements. *Id.* at *8. The Court found that "[t]he temporal proximity between Plaintiffs' hire date and their pay cuts—less than two weeks in the case of Fitz—is circumstantial evidence of Defendant's fraudulent intent." *Id.* at *10. The Court further found that Plaintiffs had presented sufficient facts to show that there may not have been an "intervening change in the situation" so as to justify the "near immediate paycuts." *Id.* For those reasons, the Court found that "under the totality of the circumstances, Plaintiffs have provided evidence sufficient to raise a material question of fact of Defendant's intent at the time it hired Plaintiffs and promised them $25 an hour in exchange for agreeing to arbitration." *Id.* Therefore, the Court ordered that the case proceed to trial on the issue of fraudulent inducement. *Id.* at *11.

Following the issuance of the Court's Memorandum Opinion and Order, the parties filed a stipulated joint motion to consolidate this case for purposes of discovery on the issue of

4

arbitrability with *Prevost v. Islands Mechanical Contractor, Inc.* (Case No. 08-cv-110), which involves similar facts and issues of law. (*See* Dkt. No. 17). Subsequently, in response to Defendant's "Unopposed Motion to Consolidate" (08-cv-110, Dkt. No. 81), the Court entered an Order on March 1, 2013 consolidating the two cases for purposes of the trial on arbitrability. (08-cv-060, Dkt. No. 81; 08-cv-110, Dkt. No. 84). The trial of the consolidated matter is scheduled to begin on April 2, 2013. *Id.* at 5.

## II.   DISCUSSION

In the instant Motion *in Limine*, Defendant requests the Court to order that "Plaintiffs and their counsel shall not use any language in opening statements, closing arguments or through testimony of witnesses" that: (1) "relate[s] to Plaintiffs' underlying claims [of] violations of Title VII, violations of the Civil Rights Act of the Virgin Islands, reimbursement for expenses, intentional infliction of emotional distress, [and] violation of the duty of good faith and fair dealing or punitive damages," or (2) "refers to 'locals' or prejudice against 'locals' or alleged discrimination against 'locals' by Defendant." (Dkt. No. 56 at 3–4). These two requests are examined in turn.

### A.   References to Plaintiffs' Underlying Claims

In its Motion *in Limine*, Defendant argues that the issue in the upcoming separate trial "is solely related to whether the Plaintiffs were fraudulently induced into entering an agreement to arbitrate disputes with the Defendant." (Dkt. No. 56 at 2).[3] In Defendant's view, "[t]his is a contractual issue only and the trial testimony and arguments should be limited to the contractual claims and the factual events surrounding each Plaintiff's execution of the arbitration

---

[3] Because the Motion *in Limine* was filed prior to the consolidation of the *Fitz* and *Prevost* matters, the arguments advanced by Defendant and addressed herein relate to the *Fitz & Hubert* portion of the consolidated case.

agreements." (*Id.*). Defendant argues that if Plaintiffs are allowed to make reference to the underlying discrimination claims, "those references will appeal to the juror's [sic] emotions and they will be unable to fairly determine the actual issue to be tried, which is whether the Plaintiffs are bound by the employment contract to arbitrate their disputes against the Defendant." (*Id.* at 3). With regard to the issue to be tried, Defendant further argues that "[i]ssues of race and local bias are unnecessary for this determination." (Dkt. No. 73 at 3).

In their Opposition brief, Plaintiffs argue that the requirement to sign the arbitration agreement was discriminatory and violative of public policy in that "the lion's share of those employees forced to sign an arbitration agreement with IMC [were not white stateside workers, but instead] were Black West Indian employees such as Plaintiffs Fitz and Hubert who were induced into signing the agreement with the promise of $25 per hour, which IMC never intended to keep them [sic]." (Dkt. No. 76 at 3). Plaintiffs' theory is that Defendant induced the black West Indian employees—whom Defendant was forced to hire in response to picketing and protests—to sign arbitration agreements in order to facilitate their ultimate firing, and then "fabricated reasons to demote them, reduce their pay, unfairly discipline them, and ultimately terminate them wrongfully on the basis of their race, national origin, and color." (*Id.* at 2–3). Plaintiffs argue that Defendant seeks to prevent Plaintiffs from using precisely the type of evidence to prove fraudulent intent that the Court previously deemed necessary for Plaintiffs' position. (*Id.* at 4).

The Court agrees with Defendant that the issue at trial—fraudulent inducement in the context of an arbitration agreement—presents a contractual issue, and that the testimony and arguments "should be limited to the contractual claims and the factual events surrounding each Plaintiff's execution of the arbitration agreements." (*See* Dkt. No. 56 at 2). However, allegedly

discriminatory motives and actions are not necessarily irrelevant to the factual events surrounding whether Plaintiffs were fraudulently induced to agree to arbitrate their employment disputes with Defendant.

In the Virgin Islands, a fraudulent inducement claim has essentially the same elements as common law fraud. *Beachside Associates, LLC v. Okemo Ltd. Liability Co.*, 2008 WL 5455402, at *2 (D.V.I. 2008). Those elements are "(1) a misrepresentation of fact, opinion, intention or law; (2) knowledge by the maker of the representation that it was false; (3) ignorance of the falsity by the person to whom it was made; (4) an intention that the representations should be acted upon; and (5) detrimental and justifiable reliance." *Shillingford v. Hess Oil of the V.I.*, Civil Action No. 98–232, 2009 WL 1765677 at *10 (D.V.I. June 18, 2009). To succeed on their claim, Plaintiffs "must show that 'when the promise was made, the promisor had no intent to fulfill it.'" *McDonald v. Davis*, Civil No. 2004-93, 2009 WL 580456 at *4 n.7 (D.V.I. Mar. 5, 2009) (quoting *Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007)). Defendant's "fraudulent intent may . . . be proved by circumstantial evidence." Restatement (Second) of Torts, Appendix, Rep. Note; *see Wilson v. S & L Acquisition Co.*, 940 F.2d 1429, 1440 (11th Cir.1991) (noting that "usually the only way to prove the intent of the person making the promise at the time the promise was made is through inferences rather than direct evidence"); *China Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc.*, 856 F. Supp. 856, 863 (D. Del.1994) ("Since actual fraudulent intent is rarely susceptible to direct proof, it is normally proven by circumstantial evidence."); *see also Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) ("Even slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent.").

Fraudulent intent "may be inferred from the promisor's repudiation of the promise soon

after it is made, with no intervening change in the situation." Restatement (Second) of Torts, § 530, Appendix, Rep. Note.  "A party's intent . . . may be inferred from the party's acts after the representation was made.  Although the failure to perform, standing alone, is not evidence of the promisor's intent not to perform, it may be considered with other factors to establish intent." *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App. 1998) (citation omitted); *see also Stauffer v. Stauffer*, 465 Pa. 558, 351 A.2d 236, 244 (Pa. 1976) ("It is clear that a fraudulent intention at the time of a transaction can be inferred from the totality of the circumstances surrounding the transaction, including subsequent conduct on the part of the defendant.").

Here, Defendant asks the Court to prevent Plaintiffs and their counsel from using "any language" during the arbitrability trial that "relate[s] to Plaintiffs' underlying claims . . . ." (*See* Dkt. No. 56 at 3).  As a preliminary matter, the extraordinary breadth of this proposed preclusion of argument and evidence militates against its acceptability.  As the Sixth Circuit has noted: "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  The Court deems it prudent to heed such advice, believing that this case does not present the type of circumstance where such a broad preclusion would be warranted or advisable.

More fundamentally, Plaintiffs correctly note that Defendant seeks to exclude precisely the type of evidence and argument that the Court previously referenced in determining that Plaintiff had proffered sufficient evidence to create a question of material fact as to whether they were fraudulently induced into signing the arbitration agreements.  (*See* Dkt. No. 76 at 3).  The Court previously found that Plaintiffs had offered evidence that if true, would constitute

8

circumstantial evidence of Defendant's fraudulent intent, including: (1) the "temporal proximity between Plaintiffs' hire date and their pay cuts—less than two weeks in the case of Fitz"; and (2) "evidence that, if true, shows that Defendant gave illegitimate and pretextual reasons for their drastic paycuts, negating the presence of an 'intervening change in the situation.'" *Fitz*, 2010 WL 2384585 at *10. The Court noted that "Defendant might ultimately prove that its justifications for cutting Plaintiffs' wages after only two weeks were legitimate; however, this is a question of fact." *Id.*

More broadly, Plaintiffs' overarching theory appears to be that Defendant never intended to hire black West Indian workers; only reluctantly agreed to hire them due to picketing and protests; imposed arbitration provisions disproportionately on black West Indian workers in order to be able to demote and fire them with relative impunity; fraudulently induced Plaintiffs to agree to arbitrate their claims; and then engaged in discriminatory adverse employment actions against Plaintiffs, including discipline, demotion, and ultimately, termination. (Dkt. No. 76 at 2–3; Dkt. No. 1 at 1–7). Under this theory, evidence of Defendant's allegedly discriminatory conduct—albeit circumstantial—would be relevant to the issue of fraudulent inducement. *See* Fed. R. Evid. 401(a) ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence . . . ."); *see also Fitz*, 2010 WL 2384585 at *9–*11.

Apparently recognizing the relevance of such evidence, Defendant focuses instead on the contention that "references to discrimination on the basis of race or national origin . . . will appeal to the juror's [sic] emotions and they will be unable to fairly determine the actual issue to be tried," (Dkt. No. 56 at 3), thus invoking Federal Rule of Evidence 403. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). However, the exclusion of all evidence of the allegedly discriminatory employment acts would appear to prevent Plaintiffs from presenting their core evidence on the elements of their claim of fraudulent inducement. *See Fitz*, 2010 WL 2384585 at *8–*10. Indeed, evidence of the underlying claims of discrimination would constitute an integral component of Plaintiffs' theory of the arbitrability case. If Plaintiffs were barred from making any reference to the underlying claims, they would be prevented from fully articulating their theory, including *why* Defendant would have fraudulently induced Plaintiffs to agree to arbitrate their claims. Fraudulent intent at the time of contract can be inferred from the totality of the circumstances, including a party's subsequent conduct. *See, e.g.*, *id.* at *9–*10; *see also Stauffer*, 351 A.2d at 244 (Pa. 1976).

Accordingly, the Court finds that, as a general matter, the probative value of evidence regarding Plaintiffs' underlying discrimination claims is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence, so as to impose a *blanket* ban on any references to Plaintiffs' underlying claims. *See United States v. Clarke*, 24 F.3d 257, 265 (D.C. Cir. 1994) (observing that the D.C. Circuit "has previously noted that the language of Rule 403 'tilts, as do the rules as a whole, toward the admission of evidence in close cases'") (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)). Defendant's first request regarding the exclusion of "any" references to Plaintiffs' underlying claims will therefore be denied. Plaintiffs will not be preemptively barred from presenting relevant argument and evidence of allegedly discriminatory employment acts that, if true, would provide circumstantial evidence supporting their claims of fraudulent inducement. *See, e.g.*, *Sperberg*, 519 F.2d at 712.

While the Court has rejected Defendant's request to exclude "any" reference relating to Plaintiffs' underlying claims, the Court's ruling in this regard is not intended to grant Plaintiffs license to convert the arbitrability trial into a full-scale trial on the merits of the underlying discrimination claims.[4] In view of questions that might arise regarding, *inter alia*, the substance, scope, and manner of presentation of evidence and argument, the Court will entertain objections at trial to the admissibility of such evidence, including as to its relevance and the possible exclusion of relevant evidence in accordance with Rule 403 of the Federal Rules of Evidence.

**B.** **Language that Refers to "Locals" or Prejudice or Discrimination Against "Locals"**

In the second request in its Motion *in Limine*, Defendant asks the Court to order that "Plaintiffs and their counsel shall not use any language in opening statements, closing arguments or through testimony of witnesses that refers to 'locals' or prejudice against 'locals' or alleged discrimination against 'locals' by Defendant." (Dkt. No. 56 at 4). Defendant argues that such language is an attempt "to induce the bias or local prejudices of the jury," and that "those references will appeal to the juror's [sic] emotions and they will be unable to fairly determine the actual issue to be tried, which is whether the Plaintiffs are bound by the employment contract to arbitrate their disputes against the Defendant." (*Id.* at 2–3). Defendant relies on *Wallace v. Kmart Corporation*, 821 F. Supp. 2d 763 (D.V.I. 2011), pointing the Court to the statement in *Wallace* that "[a] judge has the obligation to insure that the issues are presented to the jury without any unwarranted appeals to the jurors' emotions." (Dkt. No. 56 at 2–3) (quoting *Wallace*, 821 F. Supp. 2d at 769).

The *Wallace* opinion cited by Defendant also references the underlying trial at issue in

---

[4] Additionally, the Court's ruling is limited to references to Plaintiffs' underlying claims of *discrimination*. The parties have not briefed, and thus the Court has not considered, the potential relevance of Plaintiffs' other underlying claims, such as claims for intentional or negligent infliction of emotional distress and claims for breach of duty of good faith and fair dealing.

11

*Vitalis v. Sun Constructors, Inc.*, 481 F. App'x 718 (3d Cir. 2012). On appeal in *Vitalis*, the plaintiff argued, among other things, that the district court had improperly prevented him from arguing that the employer discriminated against "locals" or "local Virgin Islanders." *Id.* at 721. The Third Circuit agreed with the trial judge in holding that "locals" or "local residents of St. Croix" were not protected groups under Title VII based on race or national origin, noting that "[n]o evidence demonstrated that all of the local residents of St. Croix share a 'unique historical, political and/or social circumstance[ ].'" *Id.* (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F. 3d 760, 762 n.3 (3d Cir. 2004)). The Third Circuit concluded that "Vitalis's argument that the District Court should have treated all 'locals' as black West Indians and all 'state-siders' as whites is not supported by the record." *Id.*

In response to Defendant's instant Motion, Plaintiffs argue, among other things, that "[t]he Virgin Islands is a former slave colony and the vast majority of its local residents are Black West Indian descend[a]nts of African Slaves"; that "[t]his reality is clearly relevant to the facts of this case, and recognition of such a reality is not prejudicial"; and that "[c]learly the term 'local' in the Virgin Islands particularly in an employment setting being used by [] White stateside owners or managers of a company connotes the indigenous Black West Indian persons on St. Croix." (Dkt. No. 76 at 9–10). Plaintiffs cite the deposition of one of Defendant's representatives, who referred to a black employee as "a local kid," and notes that Defendant, through its attorney, "repeatedly used the words 'local workers' when referring to Black West Indians living on St. Croix in its response to the DOL's investigation." (*Id.* at 10–11). Additionally, Plaintiffs argue that Defendant's Motion *in Limine* on this issue lacks specificity and "is devoid of any discussion of facts or evidence relative to the law." (*Id.* at 14).

*Vitalis* stands for the proposition that "local residents of St. Croix do not constitute a

12

protected class based on their national origin." *See Vitalis*, 481 F. App'x at 721. Accordingly, the Court will not permit evidence or argument suggesting that "locals" constitute a protected class, including through references to prejudice or discrimination against "locals." *See id.* To the extent that Defendant's Motion seeks to exclude such evidence or argument, it will be granted.

However, the Court declines Defendant's implicit invitation to read *Vitalis* as supporting a standing prohibition on the use of the word "locals," without reference to the context in which the issue arises and the particular facts and circumstances of each case. *Vitalis* rejected the argument that the district court in that case should treat all "locals" as black West Indians and all "state-siders" as whites, because that argument was "not supported by the record." *Id.* at 721. In discussing the issue, the Third Circuit in *Vitalis* focused on the particular evidence in the record *in that case*. *See id.* at 721–22. The Third Circuit did not make any statement suggesting that the record evidence *in a different case* might not support, for example, the assertion that an employer used the term "locals" as shorthand for "black West Indians." *See id.*

Moreover, the Court finds that Defendant's request is overly broad, in that it asks the Court to order that Plaintiffs "shall not use any language in opening statements, closing arguments or through testimony of witnesses that refers to 'locals.'" (Dkt. No. 56 at 4). Prior to trial, the Court will not preemptively place a blanket prohibition—totally devoid of context—on the use of the term "locals." *See Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (noting that ruling on motions *in limine* "should not be made prematurely if the context of trial would provide clarity"); *Sperling v. Hoffmann-La Roche, Inc.*, 924 F. Supp. 1396, 1413 (D.N.J. 1996) ("[I]t is difficult to rule on the admissibility of pieces of evidence prior to trial. It is often useful to wait to see how the trial unfolds."). Therefore, to the extent that

Defendant's Motion asks the Court to enter an Order prohibiting Plaintiffs from making any mention of the word "locals," the Motion will be denied, with the caveat that specific objections will be entertained at trial.

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion *in Limine* is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Defendant's first request, regarding the exclusion of "any" references to Plaintiffs' underlying claims, is **DENIED**, without prejudice to Defendant's right to raise specific objections during trial; and it is further

**ORDERED** that as to Defendant's second request, it is **GRANTED** insofar as Plaintiffs are prohibited from presenting evidence and argument suggesting that "locals" constitute a protected class, including through references to prejudice or discrimination against locals; and it is further

**ORDERED** that as to Defendant's second request, it is **DENIED** insofar as it seeks to prevent Plaintiffs from using "any" language that refers to "locals," without prejudice to Defendant's right to raise specific objections during trial.

**SO ORDERED.**

Date: March 13, 2013 _____/s/_____
WILMA A. LEWIS
District Judge