**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

|  |  |
|---|---|
| **HUMPHRIES FITZ and** <br> **PIUS JAY HUBERT,** <br><br> Plaintiffs, <br><br> v. <br><br> **ISLANDS MECHANICAL** <br> **CONTRACTOR, INC.,** <br><br> Defendant. | Civil Action No. 2008-060 |

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Mary Faith Carpenter, Esq.,**
**Rhea Lawrence, Esq.,**
St. Croix, U.S.V.I.
  *For the Plaintiffs*

**Andrew C. Simpson, Esq.,**
**Emily A. Shoup, Esq.,**
St. Croix, U.S.V.I.
  *For the Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

  THIS MATTER comes before the Court on Defendant's "Renewed Motion for Judgment as a Matter of Law," which was filed on May 6, 2013 (Dkt. No. 167); Plaintiffs' Opposition thereto, which was filed on May 15, 2013 (Dkt. No. 168); and Defendant's Reply, which was filed on May 29, 2013 (Dkt. No. 170). For the reasons that follow, Defendant's Renewed Motion will be denied.

## I. BACKGROUND

### A. Procedural History

Plaintiffs filed a Complaint on July 8, 2008 against Defendant Islands Mechanical Contractor, Inc. ("IMC"), alleging that Defendant discriminated against them on the basis of their race, color, and national origin by not giving them the same pay and benefits as white workers; by disciplining them more harshly than white workers; and by discriminatorily cutting their pay and firing them. (Compl. at 1–7, Dkt. No. 1).[1] On August 25, 2008, Defendant filed a "Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration." (Dkt. No. 3). In that Motion, Defendant argued that Plaintiffs had each signed an Employment Agreement containing a binding arbitration provision, pursuant to which Plaintiffs agreed to arbitrate all claims arising out of their employment with Defendant. (Dkt. No. 3 at 1–3). Defendant thus argued that "this matter must be referred for arbitration pursuant to the Plaintiff's employment contract and the matter stayed until completion of all arbitration proceedings." (*Id.* at 3).

In opposition, Plaintiffs argued that the arbitration agreements are unenforceable because: (1) they are not signed by Defendant; (2) Plaintiffs did not knowingly and voluntarily agree to arbitrate their claims; (3) the agreements are unconscionable; and (4) Defendant fraudulently induced Plaintiffs into agreeing to arbitrate. (Dkt. No. 6 at 1, 8). In a Memorandum Opinion and Order issued on June 9, 2010, the Court denied Defendant's Motion to Compel and ordered that the case proceed to trial on the issue of fraudulent inducement. *Fitz v. Islands Mechanical*

---

[1] In their Complaint, Plaintiffs asserted violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Count I); violations of the Virgin Islands Civil Rights Act, Titles 10 and 24 of the Virgin Islands Code (Count II); an entitlement to reimbursement for Plaintiff Hubert's expenses in purchasing tools and a belt in reliance on Defendant's representations that Hubert would be treated fairly and employed during the duration of Defendant's contract (Count III); intentional or negligent infliction of emotional distress (Count IV); and violations of Defendant's duty of good faith and fair dealing, and of public policy (Count V). (Compl. at 1–2, 7–9, Dkt. No. 1).

*Contractor, Inc.*, Civ. No. 08-cv-00060, 2010 WL 2384585 at *1, *11 (D.V.I. June 9, 2010) (Dkt. No. 9 at 1, 22).

Trial was held from April 2, 2013 through April 8, 2013. (*See* Dkt. No. 161 at 1). The sole issue at trial was whether Defendant fraudulently induced Plaintiffs, Humphries Fitz and Pius Jay Hubert, to enter into the arbitration agreements at issue in the case. (*See* Dkt. No. 9 at 22; Dkt. No. 88 at 3, 6–7; Dkt. No. 111 at 3; Dkt. No. 142 at 14 n.12). At the close of Plaintiffs' case, Defendant moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The Court denied Defendant's Motion, and the jury subsequently returned a verdict finding, by a preponderance of the evidence, that Defendant fraudulently induced Plaintiffs to enter into the arbitration agreements. (*See* Dkt. No. 157 at 1–2, Dkt. No. 161 at 1–2).

On May 6, 2013, Defendant filed the instant Renewed Motion for Judgment as a Matter of Law, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. (Dkt. No. 167). In that Motion, Defendant argues that Plaintiffs failed to prove three of the five elements for fraudulent inducement, to wit: (1) that Defendant made a false statement of fact or intention; (2) that Defendant knew that the statement was false; and (3) that Plaintiffs justifiably relied on the statement to their detriment. (*See* Dkt. No. 167 at 1). Therefore, Defendant asks the Court to grant judgment as a matter of law and to enter an order staying the litigation and compelling Plaintiffs to arbitrate their claims. (*See id.* at 11).

**B.    Factual Background**

Documents and testimony were presented at trial which indicate that both Fitz and Hubert completed the relevant documents for employment with Islands Mechanical on or about March

6, 2008.[2] Documents and testimony were also presented showing that Defendant began disciplining both Plaintiffs after only several days of work. Plaintiff Fitz testified that he was reprimanded on March 12, 2008, and then again on March 14, 2008; that he refused a reduction in pay from $25.00 per hour to $18.00 per hour; and that he was terminated on April 1, 2008.[3] Plaintiff Hubert testified that he was reprimanded and demoted—with his pay reduced from $25.00 per hour to $16.00 per hour on March 14, 2008—and then terminated on March 28, 2008.[4]

Among the employment documents completed by Plaintiffs in March 2008 were nearly identical Employment Agreements. (*See* Employment Agreements ¶ 3, Dkt. Nos. 3–1 (Fitz Agreement) and 3–2 (Hubert Agreement)). The Employment Agreements contained two paragraphs—Paragraph 3 and Paragraph 7—which together constitute the arbitration agreements at issue here. Paragraph 3 contains the option to elect to resolve disputes with Defendant by either (a) arbitration, or (b) litigation through the Virgin Islands courts. (*See id.* ¶ 3). Each option includes a corresponding pay rate for the employee's "initial, normal rate of compensation": $25.00 per hour if arbitration is selected, and $23.00 per hour if litigation is selected. (*See id.*). If no option is selected, the default provision in Paragraph 3 states that the employee "will be deemed to have elected to resolve disputes by arbitration."

Neither Fitz nor Hubert selected an option under Paragraph 3 of the Employment

---

[2] *See, e.g.*, testimony of Fitz and Hubert; Defendant's Exhibit D; Plaintiffs' Exhibits 4, 21.

[3] *See also* Plaintiffs' Exhibits 21-H, 21-I.

[4] *See also* Plaintiffs' Exhibit 20D (reprimand of Mr. Hubert by Patrick Langley and Dooley Jones, for "loafing" on the job and substandard work); Plaintiffs' Exhibit 20-E (document dated April 1, 2008, stating that Mr. Hubert was terminated on March 28, 2013 for "loafing and not [being] in work area").

Agreement. (*See* Dkt. No. 3–1 at ¶ 3; Dkt. No. 3–2 at ¶ 3). Therefore, by default, under the terms of the agreements, both Plaintiffs elected to resolve their disputes by arbitration and to receive a pay rate of $25.00 per hour as their "initial, normal rate of compensation." Under the terms of Paragraph 3, "[a]t Employer's sole discretion, Employee's Hourly Rate may be adjusted annually based on performance reviews, if warranted." (*Id.* ¶ 3).[5] Finally, Paragraph 7 contains arbitration terms that apply "[i]f Employee has so elected in paragraph 3 of this Agreement." (*Id.* ¶ 7).

At trial, Plaintiffs also introduced testimony from multiple witnesses regarding alleged discrimination on the job site, in support of Plaintiffs' overarching theory that Defendant never intended to hire black West Indian workers such as Plaintiffs; agreed to hire them, reluctantly,

---

[5] Paragraph 3 of the Employment Agreement, titled "Compensation," provides:

> During the period of employment, the Employer agrees to compensate the Employee for services rendered under this Agreement as follows:
>
> Employee shall initial one of the following:
>
> _____I elect to resolve disputes with Employer by arbitration in accordance with Paragraph 8 of this Agreement, and agree to accept $25.00 per hour as my initial, normal rate of compensation.
>
> _____I elect to resolve disputes with Employer through the Virgin Islands courts in accordance with Paragraph 9 of this Agreement, and agree to accept $23.00 per hour as my initial, normal rate of compensation.
>
> **NOTE: If you fail to initial either of the above provisions and you sign this agreement, then you will be deemed to have elected to resolve disputes by arbitration as set forth above.**
>
> The hourly rate selected above is the "Hourly Rate". Employee's wages shall be paid at least _____ [weekly/bi-weekly]. At Employer's sole discretion, Employee's Hourly Rate may be adjusted annually based on performance reviews, if warranted.

(*See* Dkt. No. 3–1 at ¶ 3; Dkt. No. 3–2 at ¶ 3) (emphasis in original).

5

due to picketing and protests; imposed arbitration provisions disproportionately on black West Indian workers in order to be able to demote and fire them with relative impunity; fraudulently induced Plaintiffs to agree to arbitrate their claims; and engaged in discriminatory adverse employment actions against Plaintiffs, including discipline, demotion, and ultimately, termination.  Evidence was offered at trial to support this theory, including testimony from both Fitz and Hubert as well as other witnesses, including:  Clarence Nesbitt; Conrad Prevost; Miron Reynolds; Evans Taylor; Allen Chitolie; Derek Spann; Cynthia Spann; George Talbot (by deposition); Jerry Rollins (by deposition); Robert Turnage; and Tommy "Dooley" Jones.  (*See* Dkt. No. 135-1 at 1–2).

## II. APPLICABLE LEGAL PRINCIPLES

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a party which previously moved for judgment as a matter of law during trial under Rule 50(a) may renew its motion within 28 days after the entry of judgment.  *See* Fed. R. Civ. P. 50(b).[6]  Such a motion may be granted if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party on that issue."  *See* Fed. R. Civ. P. 50(a)(1).

As the Third Circuit has explained, a motion for judgment as a matter of law should be

---

[6] Rule 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b).  When ruling on a renewed motion for judgment as a matter of law under Rule 50(b), the court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law.  *Id.*

granted "'only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law.'" *Mulholland v. Gov't County of Berks, Pa.*, 706 F.3d 227, 237 n.14 (3d Cir. 2013) (quoting *Macleary v. Hines*, 817 F.2d 1081, 1083 (3d Cir. 1987)). Reviewing all the evidence in the record, the Court must draw all reasonable inferences in favor of the nonmoving party. *See Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 492 (3d Cir. 2002) (stating that a motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability"); *Murphy v. City of Philadelphia Dept. of Recreation*, 07-CV-4104, 2011 WL 3652480 at *2 (E.D. Pa. Aug. 19, 2011) ("[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party"). In evaluating the sufficiency of the evidence, "the Court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Ambrose*, 303 F.3d at 492; *see also Murphy*, 2011 WL 3652480 at *2 (noting that the court "may not make credibility determinations or weigh the evidence, as those are jury functions—not those of a judge").

Although motions for judgment as a matter of law "should be granted sparingly," the jury's verdict must be supported by more than a "scintilla" of evidence. *See Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003). "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (quoted in *Johnson*, 332 F.3d at 204). A Rule 50 motion

7

should therefore be granted where "the record is 'critically deficient of the minimum quantum of evidence' upon which a jury could reasonably base its verdict." *Pitts v. Delaware*, 646 F.3d 151, 155 (3d Cir. 2011) (quoting *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009)).

The elements of fraudulent inducement are: (1) a misrepresentation of fact, opinion, intention or law; (2) knowledge by the maker of the representation that it was false; (3) ignorance of the falsity by the person to whom it was made; (4) an intention that the representations should be acted upon; and (5) detrimental and justifiable reliance. *See Fitz v. Islands Mech. Contractor, Inc.*, Civ. No. 2008–060, 2013 WL 993404, at *4 (D.V.I. Mar. 13, 2013); *Spiller v. Lucci*, Civ. No. 2006–083, 2010 WL 2991062, at *5 (D.V.I. July 28, 2010); *Shillingford v. Hess Oil of the V.I.*, Civil Action No. 98–232, 2009 WL 1765677, at *10 (D.V.I. June 18, 2009); *Beachside Associates, LLC v. Okemo Ltd. Liability Co.*, 2008 WL 5455402, at *2 (D.V.I. Dec. 31, 2008). Defendant argues that Plaintiffs failed to prove the first, second, and fifth elements of fraudulent inducement. (Dkt. No. 167 at 1).

### III. DISCUSSION

In its Renewed Motion for Judgment as a Matter of Law, Defendant argues Plaintiffs failed to prove three of the five elements for fraudulent inducement: (1) that Defendant made a false statement of fact or intention; (2) that Defendant knew that the statement was false; and (3) that Plaintiffs justifiably relied on the statement to their detriment. (*See* Dkt. No. 167 at 1).[7] The

---

[7] In its Motion, Defendant does not challenge the remaining two elements: that Plaintiffs did not know that the statement was false, and that Defendant intended that Plaintiffs should act upon the statement. (*See* Dkt. No. 167 at 1); *see also Fitz*, 2013 WL 993404, at *4 (Dkt. No. 88 at 7). Therefore, the Court need not evaluate the evidence presented to determine whether a reasonable jury would have a legally sufficient evidentiary basis to find for Plaintiffs on those elements. *See* Fed. R. Civ. P. 50(a)(1).

Court will examine, in turn, the legal sufficiency of the evidence presented supporting each of these three elements.

A. **Whether Defendant Made a False Statement of Fact, Opinion, Intention, or Law**

Defendant first argues that there was insufficient evidence of a false statement to support a jury verdict. (*See* Dkt. No. 167 at 3). According to Defendant, "the only statement made to either Fitz or Hubert was as set forth in the contract: That they would be paid an initial rate of $25/hour for agreeing to resolve disputes through arbitration or they would be paid an initial rate of $23/hour if they opted to resolve disputes through the judicial system." (*Id.* at 3–4). Defendant maintains that "[b]oth of these statements were true." (*Id.* at 4). Contrary to Defendant's contention, evidence was presented at trial upon which the jury could reasonably find that Defendant made a false statement of fact or intention. *See Johnson*, 332 F.3d at 204; *Fitz*, 2013 WL 993404, at *4 (Dkt. No. 88 at 7).

Defendant concedes that "Fitz testified that Dooley Jones told him that he could choose arbitration for $25/hour or non-arbitration for $23/hour." (*See* Dkt. No. 167 at 3). Defendant further acknowledges that in the arbitration agreements contained within the Employment Agreements executed by both Plaintiffs, Defendant stated that it "agrees to compensate the Employee" with "$25.00 per hour as [the] initial, normal rate of compensation" for employees who "elect to resolve disputes with Employer by arbitration." (Employment Agreements ¶ 3). The agreement further provides that this "initial, normal rate of compensation" "may be adjusted *annually* based on performance reviews, if warranted." (*See id.*) (emphasis added).

Plaintiffs presented evidence at trial, however, that within a month of executing these agreements, they were reprimanded and terminated. Plaintiffs further testified that prior to their terminations, Hubert's pay was reduced to $16.00 per hour, and Fitz refused a reduction in pay to

9

$18.00 per hour. In addition, Plaintiffs presented testimony at trial in support of their theory that their reprimands, pay reductions, and terminations were due to discrimination and were not "based on [annual] performance reviews." (*See id.*).

Given that the agreements stated that Plaintiffs would be paid $25.00 per hour—subject to an *annual* adjustment based on performance reviews—the fact that Defendant sought to reduce both Plaintiffs' pay rates within a month of executing the agreements provides a legally sufficient basis for a jury to reasonably find that Defendant made a false statement of intention or fact with respect to the $25.00 per hour pay rate. A jury could reasonably find that the language of Paragraph 3 of the Employment Agreements amounted to a statement by Defendant that it would pay Plaintiffs $25.00 per hour until at least their first annual performance reviews.[8] A

---

[8] The fact that the putative false statements were made in Paragraph 3—one of the two paragraphs that together comprise the arbitration agreements at issue here—militates against Defendant's argument that Plaintiffs' theory depends on fraudulent inducement with respect to the entire Employment Agreements rather than the arbitration agreements contained therein. (*See* Dkt. No. 167 at 6–7). Contrary to Defendant's argument, Plaintiffs did not present only "[t]he mere allegation that the arbitration clause was part of the alleged fraudulent scheme." (*See* Dkt. No. 167 at 6). Rather, Plaintiffs presented argument and evidence supporting their theory that they were fraudulently induced specifically to enter into the arbitration agreements. Namely, Plaintiffs Fitz and Hubert presented testimony that they were induced to agree to arbitrate their claims in exchange for a pay rate of $25.00 per hour, and that shortly thereafter, Defendant sought to reduce their wages to $18.00 per hour and $16.00 per hour, respectively.

Despite Defendant's repeated contention that Plaintiffs' allegations of fraudulent inducement pertain to the entire Employment Agreements, Defendant has continued to fail to cite any authority for the proposition that if a party intends to challenge an entire contract on fraudulent inducement grounds, that party cannot also challenge—as an initial matter—an arbitration provision contained therein on the same grounds. *See Fitz v. Islands Mech. Contractor, Inc.*, Civ. No. 2008–060, 2013 WL 1129261 at *3 (D.V.I. Mar. 19, 2013). As the Court has previously noted, "it is well established by Supreme Court precedent that an arbitration provision is severable from the remainder of a contract." *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). "It is equally well established that federal courts are empowered to adjudicate claims of fraud in the inducement of the arbitration clause itself." *Id.*; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). Defendant's most recent reiterations of its arguments on this issue have provided the Court no basis on which to revisit its earlier rulings.

jury could further reasonably conclude that such a statement of fact or intention was false, because Defendant reduced Hubert's pay to $16.00 per hour and terminated Fitz's employment when he refused a reduction in pay to $18.00 per hour—both within a month of executing the agreements.[9]

Even assuming, *arguendo*, the validity of Defendant's contention that there was legally insufficient evidence presented at trial to prove discrimination, this would not aid Defendant's cause. (*See* Dkt. No. 167 at 5–6). First, Plaintiffs need not have proved the merits of their underlying discrimination claims in order to succeed in this threshold trial on arbitrability. *See, e.g.*, *Fitz v. Islands Mech. Contractor, Inc.*, Civ. No. 2008–060, 2013 WL 993404 at *6 (D.V.I. Mar. 13, 2013) ("While the Court has rejected Defendant's request to exclude 'any' reference relating to Plaintiffs' underlying claims, the Court's ruling in this regard is not intended to grant Plaintiffs license to convert the arbitrability trial into a full-scale trial on the merits of the underlying discrimination claims"). Although the Court, in its Memorandum Opinion issued on March 13, 2013, refused to "preemptively bar[]" Plaintiffs "from presenting relevant argument and evidence of allegedly discriminatory employment acts that, if true, would provide circumstantial evidence supporting their claims of fraudulent inducement," that ruling did not impose an *obligation* on Plaintiffs to present evidence of discrimination to support their claims of fraudulent inducement, or a legal requirement that discrimination had to be proved in order to

---

[9] For this reason, contrary to Defendant's argument, reliance on Paragraph 2 of the Employment Agreements—which is titled "Term" and provides that the offered employment is temporary—is not necessary for a reasonable jury to make a finding of a false statement. (*See* Dkt. No. 170 at 2; Employment Agreements ¶¶ 2, 3). Likewise, based on the evidence presented at trial, a reasonable jury need not find that there was a "$2/hour differential for agreeing to arbitrate"—or that the "going rate" for the work was $25.00 per hour, even without agreeing to arbitrate—in order to find that Defendant made a false statement of fact or intention. (*See* Dkt. No. 170 at 1).

prevail on a fraudulent inducement claim. *See id.* at 5.[10]

Indeed, Plaintiffs need not have presented *any* evidence of discrimination in order for a jury to reasonably conclude that Defendant made a false statement that Plaintiffs would be paid $25.00 an hour, subject to an annual adjustment based on performance reviews. In view of the relatively immediate reductions in pay, a jury could reasonably find that Defendant made a false statement of fact or intention with respect to the $25.00 per hour pay rate, even without evidence, or a finding, of discrimination.

Moreover, Plaintiffs presented evidence that would provide support for a jury to reasonably find that the Defendant's reasons for demoting and firing Plaintiffs were not performance-related. Hubert testified that he was demoted for not being able to use hand signals to signal a crane, even though ironworkers are not required to know crane signals. Similarly, Fitz testified that although he was hired as a crane operator, he was asked to accept a reduction in pay because he did not know how to cut steel with a cutting torch, which is "ironworker work" that crane operators are not required to do. On that basis, a jury could reasonably discredit Defendant's explanations of its reasons for demoting and terminating Fitz and Hubert. A jury

---

[10] Additionally, if—as Defendant argues—Plaintiffs failed to prove that Defendant discriminated against *other* black West Indian employees, such a failure would not compel judgment as a matter of law in favor of Defendant. (*See* Dkt. No. 167 at 5–6, 8, 10). The sole question at trial was the arbitrability of Plaintiffs' claims. (*See* Dkt. No. 111 at 3). In view of the Court's refusal to allow the arbitrability trial to devolve into a "full-scale trial on the merits of [*Plaintiffs'*] underlying discrimination claims," *Fitz*, 2013 WL 993404 at *6 (emphasis added), Defendant's suggestion that Plaintiffs were somehow required to prove acts of discrimination against *other* black West Indian employees in order to prevail is unavailing. *See, e.g.*, *Galloway v. Islands Mech. Contractor, Inc.*, Civ. No. 2008–071, 2012 WL 5830710 at *4 (D.V.I. Nov. 16, 2012) (noting—in a case litigated by the same counsel as in the instant case, involving the same defendant, and with a similar factual background—the Court's concern that the discrimination trial "not devolve into numerous mini-trials where discrimination claims of other IMC employees would be litigated"). In fact, at the trial in the instant matter, the testimony of the other IMC employees was largely limited to their firsthand observations of incidents involving Plaintiffs.

could thus reasonably find that there was no intervening change in circumstances that would justify Defendant's repudiation of its promise to pay Plaintiffs $25.00 an hour, which would then permit the jury to infer fraudulent intent. *See, e.g.*, *Fitz*, 2013 WL 993404 at *4 ("Fraudulent intent 'may be inferred from the promisor's repudiation of the promise soon after it is made, with no intervening change in the situation.'") (quoting Restatement (Second) of Torts, § 530, Appendix, Rep. Note.).

For these reasons, the evidence presented at trial provides a legally sufficient basis for a jury to reasonably find that Defendant made a false statement of intention or fact with respect to the $25.00 per hour pay rate offered in exchange for each Plaintiff's agreement to arbitrate his disputes with Defendant.

### B.     Whether Defendant Knew That the Statement Was False

Defendant further argues that there was no evidence that it knew that the statement was false. (*See* Dkt. No. 167 at 7–8; Dkt. No. 170 at 3). Contrary to Defendant's arguments, legally sufficient evidence was presented at trial to permit a jury to reasonably make such a determination.

Fraudulent intent may be proved by circumstantial evidence. *See Fitz*, 2013 WL 993404, at *4; *see also Wilson v. S & L Acquisition Co.*, 940 F.2d 1429, 1440 (11th Cir. 1991) (noting that "usually the only way to prove the intent of the person making the promise at the time the promise was made is through inferences rather than direct evidence"); *China Resource Products (U.S.A.) Ltd. v. Fayda Intern., Inc.*, 856 F. Supp. 856, 863 (D. Del.1994) ("Since actual fraudulent intent is rarely susceptible to direct proof, it is normally proven by circumstantial evidence.")  A party's intent at the time of making a statement may be inferred from the totality of the circumstances surrounding the statement, including that party's subsequent acts. *See Fitz*,

2013 WL 993404, at *4; *see also Stauffer v. Stauffer*, 351 A.2d 236, 244 (Pa. 1976). If Defendant repudiated the promise soon after it was made, with no other intervening change in the situation, the jury may infer fraudulent intent by Defendant at the time the arbitration agreement was entered into. *See Fitz*, 2013 WL 993404, at *4; Restatement (Second) of Torts, § 530, Appendix, Rep. Note; *see also Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) ("Even slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent.").

Accordingly, the evidence presented at trial—namely, that Defendant promised Plaintiffs a pay rate of $25.00 per hour in their agreements, but then reduced, or sought to reduce, their wages within a month of executing those agreements—provided a legally sufficient basis for a jury to reasonably infer that Defendant had knowledge or intent with respect to the false statement at the time the statement was made. As the Court previously found, "[t]he temporal proximity between Plaintiffs' hire date and their pay cuts—less than two weeks in the case of Fitz—is circumstantial evidence of Defendant's fraudulent intent." *See Fitz,* 2010 WL 2384585 at *10 (Dkt. No. 9 at 19). Plaintiffs further presented testimony at trial that their discipline, pay cuts, and terminations were not due to legitimate performance-related issues. Such testimony provided circumstantial evidence of Defendant's fraudulent intent. *See id.* at *10 (Dkt. No. 9 at 19–21).

Additionally, based on the testimony of several black West Indian witnesses for Plaintiffs, a reasonable jury could conclude that Defendant had a motive to make the false statement because it was reluctant to hire Plaintiffs because of their race, color, or national origin. There was testimony from black West Indian witnesses that they picketed for days before getting jobs on the project. Plaintiff Hubert testified that he was initially hired by Derek Spann,

and then fired by Dooley Jones. He further testified that, after his initial termination, he complained to the Virgin Islands Department of Labor, and began picketing the job site every day. Several witnesses for Plaintiffs also testified that Dooley Jones made racist and disparaging comments about black West Indians, and said that he did not want to pay them $25.00 per hour. Plaintiffs also presented testimony by Robert Turnage that IMC had not imposed arbitration agreements on employees at other job sites or in other locations. The foregoing evidence of Defendant's motive would permit a jury to reasonably make the inference that Defendant intentionally made a false statement.

Viewing all this evidence in the light most favorable to Plaintiffs—including the evidence of the contractual terms, the adverse employment actions, Defendant's motive, and the temporal proximity of the signing of the agreements to the subsequent reprimands, pay reductions, and terminations of employment—a jury could reasonably infer that Defendant did not intend to continue to pay Plaintiffs $25.00 per hour, and thus knew the falsity of its statements in the arbitration agreements.

## C.    Whether Plaintiffs Justifiably Relied on the Statement, to Their Detriment

Defendant argues that there was insufficient evidence for the jury to find justifiable reliance. (*See* Dkt. No. 167 at 8–9). However, there was legally sufficient evidence presented at trial to permit a jury to reasonably conclude that Plaintiffs justifiably relied on the false statement—that they would be paid $25.00 per hour—to their detriment.

The evidence shows that Plaintiffs did not place their initials next to the options for arbitration or litigation, and therefore, by default, chose arbitration with a pay rate of $25.00 per hour. As discussed above, they were disciplined and terminated shortly thereafter. Plaintiff Fitz testified as to his disciplinary action and reprimands, and ultimate termination, shortly after

being hired.[11] Plaintiff Hubert testified as to his decrease in pay from $25.00 per hour to $16.00 per hour, his written reprimand from Al Middleton on March 14, 2008, and his ultimate termination on March 28, 2008.[12]

Viewed in the light most favorable to Plaintiffs, this provides circumstantial evidence that is legally sufficient for a reasonable jury to make the inference that both Plaintiffs justifiably relied on Defendant's promise to pay them $25.00 per hour in exchange for giving up their right to a jury trial, to their detriment. The terms of the agreements, and the testimony of the witnesses, provide evidence upon which a reasonable jury could base a conclusion that Plaintiffs were justified in relying on Defendant's representations in the agreements. The two-tiered wage structure ($23.00 per hour for litigation vs. $25.00 per hour for arbitration) is evidence of the incentive that was provided to employees to select arbitration. Plaintiffs testified that they needed the jobs and the money, and that they did not know that the promise to pay them $25.00 was a false promise. A reasonable jury could conclude that if Plaintiffs had known that the statement was false—and that Defendant intended to pay them less than $25.00 per hour and then subsequently terminate them—then Plaintiffs would have preferred to retain their right to a jury trial.

A reasonable jury could thus infer that Plaintiffs agreed to give up their right to a jury trial in reliance on the promise of a pay rate of $25.00 per hour. Such a reasonable jury could further conclude that Plaintiffs were justified in taking Defendant at its word, and that such justifiable reliance operated to Plaintiffs' detriment, because they waived their right to a jury trial

---

[11] *See also* Plaintiffs' Exhibit 21-K dated April 1, 2008 (stating reason for termination: reduction in force).

[12] *See* Exhibit 20-C (written reprimand of Mr. Hubert by Al Middleton, dated March 14, 2008); Exhibit 20-E (document dated April 1, 2008, stating that Mr. Hubert was terminated on March 28, 2013 for "loafing and not in work area").

16

for employment disputes in exchange for an illusory promise. Therefore, contrary to Defendant's argument, legally sufficient evidence was presented at trial to permit a jury to reasonably conclude that Plaintiffs justifiably relied on Defendant's false statement, to their detriment.

## IV. CONCLUSION

For all the foregoing reasons, viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that evidence was presented at trial that would provide a jury with a legally sufficient evidentiary basis for determining that each Plaintiff met the elements of fraudulent inducement. Accordingly, Defendant's Renewed Motion for Judgment as a Matter of Law will be denied. *See* Fed. R. Civ. P. 50(b).

An appropriate Order accompanies this Memorandum Opinion.


Date:  September 3, 2013                             _____/s/_____
                                                    WILMA A. LEWIS
                                                    Chief Judge